**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**EDWARD CHRISTOPHER GALKA,**

       **Plaintiff,**

vs.                                            Case No. 2:11-CV-10271
                                               HON. GEORGE CARAM STEEH

**LAURA GROVER, ET AL.,**

       **Defendants.**

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL [#15], GRANTING DEFENDANTS' MOTION TO DISMISS [#8] AND DISMISSING ACTION**

**I.    INTRODUCTION**

Plaintiff, proceeding *pro se*, filed the instant action on January 21, 2011. In his complaint, plaintiff alleges that defendants violated his Fourth and Fourteenth Amendment rights under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)[1] (count I) when they refused to provide plaintiff an in-person hearing concerning the acceleration of a United States Department of

---

[1] The court construes his claim under the Fourth and Fourteenth Amendments as a Bivens claim as plaintiff's complaint states that 42 U.S.C. § 1983 applies, however § 1983 actions involve state actors.  See Castro v. United States, 775 F.2d 399, 405 (1st Cir. 1985) (citing District of Columbia v. Carter, 409 U.S. 418, 424-25 (1973); Zernial v. United States, 714 F.2d 431, 435 (5th Cir. 1983)).  All of the defendants herein are employees of an agency of the United States, specifically the Rural Housing Service of the USDA.

1

Agriculture (USDA) mortgage on his home located in Washington Township, Michigan. Plaintiff also raises a breach of contract claim (count II) alleging that the USDA breached the parties' contract by failing to provide plaintiff an in-person hearing with respect to accelerating the mortgage. Additionally, plaintiff claims that defendants harassed, misused and abused their power by initiating a "frivolous" investigation of plaintiff's property, and pursuing foreclosure rather than less extreme remedies (count III), and alleges intentional infliction of emotional distress based on defendants harassment and fraudulent acceleration of plaintiff's mortgage (count IV). Lastly, plaintiff alleges that defendants committed fraud by denying plaintiff the opportunity to participate in investigations or hearings that pertain to his property (count V).

Defendants filed a motion to dismiss on April 8, 2011. Defendants submit this court should dismiss all five counts pursuant to Federal Rule of Civil Procedure 12(b)(1), (5)[2], and (6) for various reasons discussed below. On June 3, 2011, plaintiff filed a response to defendants' motion to dismiss and on June 20, 2011, defendants filed a reply to plaintiff's response. Pursuant to Rule 7.1(f)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, no oral argument is required as this matter is ripe for decision.

## II. FACTUAL BACKGROUND

Essentially, plaintiff's allegations comprise the factual background for this motion. Sometime in May of 2008, plaintiff contacted the Rural Housing Service (RHS) of the

---

[2] While defendants cite to Federal Rule of Civil Procedure 12(b)(5) as a basis for dismissal, they make no arguments concerning insufficient service of process.

2

USDA to acquire a mortgage on a home he wanted to purchase.[3] (Compl. ¶ 8) In August 2008, after resolving a few credit issues, the USDA approved plaintiff for a $212,000 mortgage and plaintiff's offer on the property in Washington Township, Michigan for $185,000 was accepted by the bank. (Id. at ¶¶ 9-12)

Plaintiff claims that he contacted Grover at the USDA and she informed him that in order to be eligible for the USDA's loan program he had to obtain a property inspection report, termite inspection report and other items at his own expense. Defendant Grover also arranged for an appraisal of the property. After plaintiff submitted all the required reports, defendant Grover informed him that the USDA would not authorize the loan because the inspection report revealed that a new roof was needed at a cost of $13,500 and the property was appraised only for $191,000. (Id. at ¶ 15)

In late November 2008, plaintiff appealed for a second appraisal. (Id. at ¶ 18) In late December 2008, after plaintiff was told by his realtor that the bank was relisting the property due to the appraisal delay, plaintiff told defendant Grover of his intention to file a complaint against her due to the delays with the appraisal process. (Id. at ¶ 20-21) Thereafter, plaintiff contacted Director Richard Anderson to complain and Anderson arranged for the appraisal process to be expedited. In mid-January 2009, defendants Grover and Harris told plaintiff that the second appraisal calculated the same price and that plaintiff would not be able to purchase the property. (Id. at ¶ 23) After negotiating

---

[3] Section 502 of the Housing Act of 1949 authorizes the USDA to loan money with interest to eligible applicants including "rural residents . . . for the purchase of buildings . . . in order to enable them to provide dwellings . . . for their own use." 42 U.S.C. § 1471(a)(1) & (2).

3

with the bank, plaintiff obtained a lower purchase price on the property. The new price was $167,000 and plaintiff closed on the loan in March 2009. (Id. at ¶ 25-27)

In mid April 2009, plaintiff learned that defendants Grover and Anderson were investigating a termite inspection report that plaintiff provided. (Id. at ¶ 28) In late June 2009, defendant Grover contacted plaintiff to inspect the work performed on plaintiff's property as a condition before releasing additional funds to plaintiff's repair escrow account. (Id. at ¶30) Subsequently, defendant Grover and a representative from the USDA Office of the Inspector General (OIG) visited the property as part of the investigation for the termite inspection report. (Id.) At the end of the meeting, the representative from OIG "agreed that the complaint was frivolous" and stated that the matter was considered closed, because the home had no termites or rodent infestation. (Id.)

In July 2009, defendant Grover informed plaintiff that his mortgage would be accelerated and the property foreclosed because the OIG and USDA were unable to verify plaintiff's employment and the termite inspection report. (Id.) Plaintiff claims that he was up-to-date with his monthly payments on the loan. On July 24, 2009, plaintiff received a letter from defendant Smith stating that foreclosure proceedings were being initiated. (Id. at ¶ 33) On August 5, 2009 the Office of General Counsel authorized USDA to accelerate plaintiff's loan for non-monetary default. (Id. at ¶ 35) On September 3, 2009, plaintiff's request for reconsideration was denied by RHS and plaintiff appealed the decision. (Id. at ¶ 37) The matter was referred to a National Appeals Division (NAD) Hearing Officer and plaintiff retained counsel. (Id. at ¶ 39)

During prehearing conferences, plaintiff's counsel told the NAD hearing officer that plaintiff was suffering from Post Traumatic Stress Syndrome (PTSS) from his tenure in Operation Iraqi Freedom and would not be able to attend the hearing. (Id. at ¶ 39) Plaintiff's counsel requested postponing the hearing until plaintiff could participate. (Id.) The NAD hearing officer denied the request and scheduled the hearing for February 12, 2010. (Id.) In early February 2010, plaintiff's counsel could no longer represent plaintiff due to health concerns and an overwhelming schedule. (Id. at ¶ 40) Plaintiff contacted the hearing officer by certified fax to postpone the hearing by 60 days because plaintiff was receiving in-patient treatment for PTSS. (Id. at ¶ 41) The hearing officer postponed the first pre-trial hearing by five days until February 17, 2010. (Id. at ¶ 42) On February 17, 2010, without plaintiff being present, the hearing officer scheduled the second pre-trial hearing for March 5, 2010 and plaintiff again requested a postponement. (Id. at ¶ 43-44) The hearing officer proceeded with the second pre-trial hearing without plaintiff being present and scheduled the official hearing for March 19, 2010. (Id. at ¶ 45) On March 19, 2010, the hearing officer conducted the hearing *in absentia* and upheld the RHS decision to accelerate the mortgage. (Id. at ¶ 46)

Plaintiff filed for a Director Review regarding the March 19, 2010 hearing that was conducted *in absentia* and was notified in late April 2010 by the RHS Director that the decision would be upheld. (Id. at ¶¶ 47, 49)

## III.     REQUEST FOR COUNSEL

On June 6, 2011, plaintiff filed a motion for appointment of counsel. In a civil case, appointment of counsel is not a constitutional right. Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993). Rather, it is a privilege that is justified only by exceptional

circumstances. Id. at 606. The court is to examine the complexity of the factual and legal issues involved, as well as the abilities of the plaintiff to represent himself. Id. Upon review of the various filings submitted by both parties, the court concludes there are no exceptional circumstances warranting appointment of counsel. Moreover, the court has no funds for appointment and compensation of counsel in civil actions such as this. Plaintiff's motion for appointment of counsel is DENIED.

## IV. DEFENDANTS' MOTION TO DISMISS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction. Defendants' motion to dismiss is a factual attack on the court's subject matter jurisdiction. In analyzing the motion

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994), cert. denied, 513 U.S. 868 (1994)]. The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of demonstrating subject matter jurisdiction. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).

Ashley v. United States, 37 F. Supp.2d 1027, 1029 (W.D. Mich. 1997). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Sweeton v. Brown, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting United States v. Siviglia, 688 F.2d 832, 835 (10th Cir. 1981), cert. denied, 461 U.S. 918 (1983)).

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more

7

than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 1950.

### B. Analysis

### i. Violation of Fourth and Fourteenth[4] Amendment Rights (Count I)

#### a) Sovereign Immunity

Plaintiff is suing defendants in both their individual and official capacities for allegedly violating his constitutional rights.  Government officials sued in their official capacities stand in the shoes of the entity they represent.  Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003).  Therefore, any official capacity claims against individual defendants are against an agency of the United States.  Under the doctrine of sovereign immunity, the United States is immune from suit absent a waiver.  United States v. Testan, 424 U.S. 392, 399 (1976).  This principle extends to agencies of the United States as well, which are immune absent a showing of a waiver of sovereign immunity. Whittle v. United States, 7 F.3d 1259, 1262 (6th Cir. 1993).  Plaintiff has the burden of showing that the United States has waived its immunity and consented to suit.  Id.  The United States has not waived its immunity to suit in Bivens actions.  See Nuclear Transport & Storage, Inc. v. United States, 890 F.2d 1348, 1351-52 (6th Cir. 1989).

Plaintiff asserts count I is properly brought under 42 U.S.C. § 1983 and not Bivens, supra, because federal defendants can be sued as state actors.  However, courts have recognized such claims only when there is evidence that federal and state

---

[4] Plaintiff's allegation that federal defendants violated his due process rights incorrectly invokes the Fourteenth Amendment; however the court construes the claim under the Due Process Clause of the Fifth Amendment.

8

officials engaged in a conspiracy or symbiotic venture to violate a person's rights under the Constitution or federal law. Strickland v. Shalala, 123 F.3d 863, 867 (6th Cir. 1997) (citing Cabrera v. Martin, 973 F.2d 735, 742-43 (9th Cir. 1992)). In Shalala, the Sixth Circuit Court of Appeals declined to find that a federal official's exercise of her duties under a cooperative federalism scheme sufficient to render the federal official an actor "under color of state law." Id. at 866-67. Thus, plaintiff's claim of alleged unconstitutional violations asserted against defendants in their official capacities and the USDA is dismissed for lack for subject matter jurisdiction.

### b) Qualified Immunity

As for plaintiff's claim against the defendants in their individual capacities, defendants argue that the complaint does not describe constitutional rights that were clearly established at the time of defendants' alleged misconduct, thus qualified immunity applies and this claim should be dismissed. See Waeschle v. Dragovic, 576 F.3d 539, 544 (6th Cir. 2009). According to defendants, it was not clear to them that their conduct was unlawful; rather they believed existing law authorized their conduct. Under 7 C.F.R. § 3550.164(e), the USDA may accelerate a loan if a borrower receives unauthorized assistance based on false information. See also 7 C.F.R. § 3550.164(a) & (b)(1). The agency must ensure dwellings are free of termites, must check that borrowers have adequate income and may perform on-site inspections. 7 C.F.R. § 3550.57(c); 7 C.F.R. § 3550.53(g); 7 C.F.R. § 3550.154. In addition, defendants assert foreclosures on their face provide sufficient due process to preclude such a claim. See, e.g., Boyd v. United States, 861 F.2d 106, 109 (5th Cir. 1988).

9

Plaintiff argues he has set forth sufficient evidence that defendants violated his constitutional rights.  Plaintiff maintains that defendants participated in a scheme to defraud him of his property interest by forwarding "fraudulent" information to the NAP hearing officer and the USDA subsequently initiated foreclosure proceedings on the property.  Pl.'s Answer Defs.' Mot. Dismiss at 9; Compl. ¶ 58.  In addition, plaintiff asserts the FTCA defeats qualified immunity and allows claims to be brought against federal defendants for intentional torts.  Plaintiff's arguments are without merit.

In resolving the issue of qualified immunity, courts are required to engage in a two-step decisional process: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct.  Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009) (citing Saucier v. Katz, 533 U.S. 194, 121 (2001)).  The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." Sheets v. Mullins, 287 F.3d 581, 586 (6th Cir. 2002).  A district court enjoys "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 129 S.Ct. at 818.

In order to state a cause of action under Bivens, the plaintiff must allege facts which show that the individual defendant acted "under color of federal authority" and was personally involved in the deprivation of the plaintiff's constitutional rights.  Mueller v. Gallina, 137 Fed. Appx. 847, 850 (6th Cir. 2005).  Plaintiff has the burden of showing

the defendants directly participated or encouraged a specific act of misconduct or at a minimum show the defendants implicitly authorized, approved or knowingly acquiesced in the unconstitutional misconduct. Taylor v. Michigan Dep't. of Corr., 69 F.3d 76, 77-78 (6th Cir. 1995). Plaintiff asserts that defendant Harris supervised defendant Grover and was involved in an appraisal meeting in January 2009, but plaintiff fails to cite any specific facts showing the two defendants directly participated or implicitly acquiesced in unconstitutional conduct. Additionally, while not raised by defendants in their motion, plaintiff's claim against defendant Anderson suffers from the same deficiencies as the allegations asserted against Harris and Smith. Defendant Anderson is mentioned only once in plaintiff's complaint. Specifically, plaintiff alleges that he complained to defendant Anderson about defendant Grover's handling of the appraisal process, and "[i]n early January 2009, plaintiff was told by Richard Anderson that he expedited an appraisal." Such allegations are insufficient to demonstrate that Anderson was personally involved in a deprivation of plaintiff's constitutional rights.

Even if plaintiff's alleged facts were sufficient to state a Bivens claim against defendants Harris and Smith, qualified immunity bars claims against both defendants. Plaintiff fails to show Harris' and Smith's conduct "violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." See Sheets v. Mullins, 287 F.3d at 586. Plaintiff claims defendants Harris and Smith forwarded fraudulent information to the NAD hearing officer and that information was used as a basis to accelerate his mortgage, thus defendants were acting outside their employment and lose qualified immunity. Contrary to plaintiff's assertion, the USDA accelerated his loan

because plaintiff's employment could not be verified. Further, under 7 C.F.R. § 3550.164(e), RHS can adjust all accounts retroactively and if the recipient does not repay the unauthorized assistance within 30 days, RHS may accelerate the loan. Unauthorized assistance includes any loan for which the recipient was not eligible. 7 C.F.R. § 3550.164(a). Repayment ability was one of the eligibility requirements plaintiff was required to demonstrate, defined as adequate and dependably available income. 7 C.F.R. § 3550.53(g). Additionally, the USDA cannot provide loans greater than the market value of a property as-improved, must ensure dwellings are free of termites, and may perform on-site inspections. 7 C.F.R. § 3550.63, 7 C.F.R. § 3550.57(c); 7 C.F.R. § 3550.53(g); 7 C.F.R. § 3550.154. Consequently, plaintiff has failed to meet his burden of alleging that Harris, Smith and Anderson violated a right so clearly established that a reasonable official in defendants' positions would have known the conduct in question violated plaintiff's constitutional rights. Count I is dismissed against defendants Harris, Smith, and Anderson.

## Due Process Claim

Defendants assert plaintiff has failed to state a claim under the Due Process Clause because he cannot demonstrate that he was deprived of a property interest without the prescribed process protected by the Due Process Clause. Defendants concede loan proceeds can constitute a property interest, but to the extent plaintiff's allegations rely on delays in receiving the loan, investigations into the loan application or in purchasing the property, such allegations do not establish property interests protected by the Due Process Clause. The court agrees that plaintiff has failed to state a claim under the Due Process Clause based on these allegations. See Shaner v.

United States, 976 F.2d 990, 994-95 (6th Cir. 1992). Plaintiff also argues the NAD hearing conducted *in absentia* violated his constitutional due process right to "present evidence and call witness with respect to the allegations" before being deprived of his property. Pl.'s Answer Defs.' Mot. Dismiss at 11; Compl. ¶ 58.

To establish a due process claim, plaintiff must allege "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the [federal government] did not afford him adequate procedural rights prior to depriving him of the property interest." Waeschle v. Dragovic, 576 F.3d 539, 544 (6th Cir. 2009) (internal citations omitted). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). In Loudermill, the Supreme Court held "'the root requirement' of the Due Process Clause is 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest'." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citing Boddie v. Connecticut, 401 U.S. 371, 379 (1971) (emphasis in original); see Bell v. Burson, 402 U.S. 535, 542 (1971)).

Defendants concede that proceeds of a loan can constitute a property interest, but argue that plaintiff's dissatisfaction with the process and administration of his loan does not create a property interest in specific procedures. Defendants are correct; plaintiff has a property interest in the RHS loan. See Johnson v. United States Department of Agriculture, 734 F.2d 774, 782 (11th Cir.1984) (collecting cases). In Johnson, the Farmers Home Administration, a division of the USDA, made home loans to low-income rural families pursuant to Section 502, Title V of the Housing Act of 1949,

42 U.S.C. § 1472 (1980). The Johnson court held, "a [Farmers Home Administration] loan, once made, creates a statutory entitlement and a property interest protected by the due process clause of the Fifth Amendment." Id. Plaintiff received a loan under a similar program known as the direct single family housing loan program operated by RHS of the USDA. 7 C.F.R. § 3550.1. Therefore, plaintiff had a property interest in the loan proceeds. He was deprived of this property interest when defendants decided to accelerate the loan.

Under federal regulations, plaintiff had a right "to present oral and documentary evidence, oral testimony of witnesses, and arguments in support of the party's position; controvert evidence relied on by any other party; and question all witnesses. 7 C.F.R. § 11.8(c)(5)(ii); see also, 7 C.F.R. § 11.8(c)(5)(i) ("A hearing before a Hearing Officer will be in person unless the appellant agrees to a hearing by telephone.") The regulations also provide that if an absent party has demonstrated good cause for the failure to appear, the NAD hearing officer shall reschedule the hearing unless all parties agree to proceed without a hearing. See 7 C.F.R. § 11.8(c)(6)(iii). Plaintiff requested the hearing be rescheduled due to his in-patient treatment for PTSS, which may constitute "good cause."

Nevertheless, the court cannot conclude that plaintiff has stated a constitutional violation because he does not specify the documentary proof or witness testimony he would have presented had he been given an in-person hearing. Further, he does not claim that a leave of absence to attend the hearing was denied by the facility treating him for PTSS. Thus, his complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim [] that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949.

14

Plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct, [thus] the complaint" does not show "the pleader is entitled to relief." Id. at 1950.

Plaintiff's Due Process Clause claim also fails because defendant Grover is the only remaining defendant this claim is asserted against. Plaintiff's complaint fails to allege any personal involvement by defendant Grover in the proceedings before the NAD officer. It is plaintiff's burden to show that defendant Grover directly participated or encouraged the specific incident of misconduct or implicitly authorized the unconstitutional conduct. Taylor, 69 F. 3d at 77-78. For this reason also, plaintiff's claim is subject to dismissal.

## Seizure Claim

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Fourth Amendment protects criminal suspects, as well as government intrusion in the civil context. See Camara v. Municipal Court of San Francisco, 387 U.S. 523, 539 (1967); see also, Soldal v. Cook County, Ill., 506 U.S. 56, 62-63 (1992) (holding that the Fourth Amendment "protects property as well as privacy.")

A "'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal, 506 U.S. at 61. While plaintiff alleges that foreclosure proceedings have commenced, he does not state that his property has already been taken. In fact, according to the USDA's website, the foreclosure sale is scheduled for August 18, 2011 and plaintiff remains in possession of

his property as the sale listing states: "Ejectment will be at the sole cost of buyer. Property is occupied."[5] Plaintiff's Fourth Amendment claim is dismissed for failure to state a claim.

### ii.     Breach of Contract Claim (count II)

Defendants argue that the United States Court of Federal Claims has exclusive jurisdiction over plaintiff's contract claim, defendants are correct. The Claims Court has exclusive jurisdiction over non-tort claims against the United States exceeding $10,000. See TransAmerica Assurance Corp. v. Settlement Capital Corp., 489 F.3d 256, 264 n.11 (6th Cir. 2007). Moreover, with limited exceptions that are not applicable here, the Claims Court has exclusive jurisdiction over claims founded upon a contract with the United States regardless of the amount of the claim. See A.E. Finley & Associates, Inc. v. United States, 898 F.2d 1165, 1167 (6th Cir. 1990) (citing Chemung County v. Dole, 781 F.2d 963, 967 (2d Cir. 1986)). Plaintiff's claim alleges he secured a loan in the amount of $167,000 and he requests damages totaling $550,000. Consequently, plaintiff's breach of contract claim is dismissed for lack of subject matter jurisdiction.

### iii.    Exhaustion of Administrative Remedies (counts III, IV, V)

Defendants argue counts III through V should be dismissed because plaintiff did not exhaust his administrative remedies before filing suit. Def.s' Mot. Dismiss at 1. The FTCA provides,

---

[5] See U.S. DEPARTMENT OF AGRICULTURE, RURAL DEVELOPMENT, Properties for Sale, http://www.resales.usda.gov/sfhdirect/propertydetailFcl.cfm?ReqKey=38841&cnty=099 &st=26&prevlistpg=map&showcity=n (last visited July 27, 2011).

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). In McNeil, the Supreme Court held the most natural reading of the FTCA is that "Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." McNeil v. United States, 508 U.S. 106, 112 (1993). Two conditions must be met prior to suing the United States for certain torts committed by federal employees. The two conditions are that before filing suit, claimant must present the claim to the appropriate federal agency and the claim must be finally denied by the agency. 28 U.S.C. § 2675(a); see also Paradise Foods, Inc. v. United States, No. 05-73378, 2006 U.S. Dist. LEXIS 94883, at *6-7 (E.D. Mich. April 7, 2006).

In Hoogerheide v. I.R.S., 637 F.3d 634 (6th Cir. 2011), a taxpayer sued the I.R.S. without first exhausting the I.R.S.'s administrative remedies. The Hoogerheide court found that the exhaustion requirement is a non-jurisdictional issue, mainly because the statute is silent regarding jurisdiction. Id. at 637. However, the court dismissed the claim because the United States timely raised failure to exhaust as a defense in its motion to dismiss, similar to the defendants here. Benjamin Young, Jr., USDA assistant general counsel, attests in an affidavit that there is no record of plaintiff filing any administrative tort claims with USDA. Def.s' Mot. Dismiss Ex. 2. Plaintiff asserts he exhausted his administrative remedies by requesting a review of the acceleration of his loan and filing a complaint against defendants with the USDA Office of Civil Rights.

17

Plaintiff does not dispute that he never filed an administrative claim with the USDA. Therefore, this court declines to review these claims because defendants timely raised failure to exhaust as a defense to plaintiff's claims, and plaintiff has provided no allegations or evidence showing that he exhausted his claims prior to filing this action.[6]

**V.    CONCLUSION**

Accordingly,

IT IS ORDERED that defendants' motion to dismiss [#8] is GRANTED.

Plaintiff's motion for appointment of counsel [#15] is DENIED.

Plaintiff's motion to stay foreclosure proceedings [#18] is MOOT.

This action is dismissed.

Dated:  August 16, 2011

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and also to Edward Galka at 8583 Frederick Dr., Washington Township, MI 48094 on
August 16, 2011, by electronic and/or ordinary mail.

> s/Josephine Chaffee
> Deputy Clerk

---

[6] Furthermore, plaintiff's fraud claim is barred by the FTCA. Under 28 U.S.C. § 2680(h), claims arising out of misrepresentation or deceit are an exception to the waiver of the United States' sovereign immunity. See Salt Lick Bancorp v. F.D.I.C., 187 Fed.Appx. 428, 441 (6th Cir. 2006). When an exception applies, the United States retains immunity from suit. Id.